LAW OFFICE OF TIM PETUMENOS
1227 West 9th Avenue, Suite 301, Anchorage, AK 99501
Phone: (907) 276-2676   Email: timp@tpaklaw.com

THE UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

| | |
|---|---|
| WT AK VENTURES LLC, an Alaska limited liability company; and TYLER CASKEY, an individual,<br><br>Plaintiff,<br><br>v.<br><br>KC KREGAR, an individual and d/b/a Bristol Bay Fishing Club,<br><br>Defendant. | CASE NO. 3:19-CV-_____<br><br>**COMPLAINT** |

COMES NOW Plaintiffs WT AK VENTURES LLC (WT AK Ventures) and TYLER CASKEY for causes of action against Defendant KC KREGAR, individually and doing business as Bristol Bay Fishing Club and allege and state as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff WT AK Ventures LLC is, and during all times herein relevant was, an Alaskan limited liability company having its principal place of business in the State of Alaska. The members of WT AK Ventures are Will S. Skinner, a citizen of California, and Tyler Caskey, a citizen of Oregon. WT AK Ventures operates a king salmon fish camp on the Nushagak River during the summer months where fishermen from all over the world come to fish for king salmon (www.kingsalmoncamp.com).

2. Plaintiff Tyler Caskey is, and during all times herein relevant was, a citizen of Oregon. Tyler Caskey is an owner of WT AK Ventures. He is the head guide, camp operator and onsite manager for WT AK Ventures during the fishing season.

3. Defendant KC Kregar is, and during all times herein relevant was, a citizen of Alaska living in Dillingham, Alaska, doing business as Bristol Bay Fishing Club, and is subject to personal jurisdiction in this Court.

4. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendant, and the total amount in controversy exceeds $75,000, exclusive of costs and interest of this action.

*See Johnson v. Columbia Props. Anchorage*, LP, 437 F.3d 894 (9th Cir. 2005) ("We therefore join our sister circuits and hold that, like a partnership, an LLC is a citizen of every state of which its owners/members are citizens.)

5. Venue is proper in this District pursuant to 28 U.S.C.A. section 1391(b)(1).

## GENERAL ALLEGATIONS

6. This case arises out of a Property Use Agreement (Agreement) entered into between WT AK Ventures and KC Kregar in November 2017.

7. On November 20, 2017, WT AK Ventures and KC Kregar entered into the Agreement whereby KC Kregar agreed to lease Lot 5C Wallona Heights, just below the Kokwok river confluence ("Property") to WT AK Ventures for the 2018 season with WT AK Ventures having the option to lease the property during the 2019 season. *See* Exhibit 1 (Property Use Agreement).

8. WT AK Ventures began operating its king salmon camp on the Nushagak River in 2016 and leased land on the Nushagak River from Choggiung Ltd. during the 2016 season to operate the camp.

9. During the 2016 season, KC Kregar and Tyler Caskey met and subsequently discussed the possibility of WT AK Ventures storing its camp property (*e.g.*, boats, motors, tents, generators, appliances and various other camp supplies necessary for the camp's operation) at KC Kregar's property during the off season for a fee. Thereafter, KC Kregar and WT AK Ventures entered into an agreement whereby WT AK Ventures would store its camp property at KC Kregar's property for the 2016/2017 off season for a fee. WT AK Ventures stored its property at KC Kregar's property during the 2016/2017 off season for a fee.

10. During the 2017 season, WT AK Ventures continued to operate the salmon camp on the Nushagak River and once again leased land on the Nushagak River from Choggiung Ltd. during the 2017 season.

11. During the 2017 season, KC Kregar and Tyler Caskey discussed WT AK Ventures once again storing its camp property at KC Kregar's property during the 2017/2018 off season for a fee. Thereafter, KC Kregar and WT AK Ventures entered into an agreement whereby WT AK Ventures would store its camp property at KC Kregar's property for the

2017/2018 off season for a fee. WT AK Ventures stored its property at KC Kregar's property during the 2017/2018 off season for a fee.

12. During the 2017 season, KC Kregar and Tyler Caskey also discussed WT AK Ventures leasing the Property to operate the king salmon camp during 2018 and 2019 seasons. KC Kregar was aware that WT AK Ventures had been leasing land for the king salmon camp operation from Choggiung Ltd. KC Kregar was aware that WT AK Ventures would be giving up its right to lease the land where it had been operating the camp for the past two seasons if WT AK Ventures left and began leasing the Property for its king salmon camp from KC Kregar. The right to lease the Property for at least two seasons was an essential and critical term of the Agreement because WT AK Ventures would forfeit its right to renew the lease with Choggiung Ltd. for future seasons. Thereafter, WT AK Ventures and KC Kregar entered into the Agreement.

13. WT AK Ventures leased the Property for the operation of the king salmon camp during the 2018 season.

14. Based on the terms of the Agreement, including the option to lease the Property in 2019, WT AK Ventures agreed to transport supplies from Dillingham to the Property in order to build a dining hall with a fully functioning kitchen area where clients could gather for meals and entertaining. The Property did not have a dining hall or kitchen area that could accommodate WT AK Ventures' clients. In June 2018, WT AK Ventures built the dining hall and kitchen area prior to clients arriving at the camp. WT AK Ventures paid for the expense of transporting the supplies from Dillingham to the Property and paid for the labor to build the dining hall and kitchen area. KC Kregar paid for the supplies.

15. Despite the terms of the Agreement whereby KC Kregar agreed to lease the Property to WT AK Ventures during a specific period of time (June 12 through July 14, 2018) during the 2018 season, he failed to abide by the terms of the Agreement during the 2018 season because he refused to vacate the Property when clients arrived at the camp during the time period that WT AK Ventures had leased the Property from him. Instead, KC Kregar was physically present on the Property during the entire lease period when clients were present, with a few limited exceptions when he was fishing or returned to Dillingham for a short period time. This was a material breach of the Agreement.

16. KC Kregar's conduct during the operation of the king salmon camp during the 2018 season when clients were present had a negative impact on the overall operation of the camp during the 2018 season. KC Kregar was belligerent, threatening, disruptive and disparaging to WT AK Ventures' clients, guides and staff during the 2018 season. KC Kregar also made repeated defamatory statements regarding Tyler Caskey during the 2018 season that reflected negatively on Tyler Caskey and WT AK Ventures. KC Kregar also made disparaging and derogatory statements about native Alaskans to WT AK Ventures' clients.

17. The Agreement provided that WT AK Ventures would be allowed to store its camp property on the Property during the 2018/2019 winter off season. WT AK Ventures exercised its right to store its equipment on the Property and paid KC Kregar the agreed upon fee. The terms of the storage were confirmed in emails between WT AK Ventures and KC Kregar on July 20 and 21, 2018, wherein the parties agreed to a June 11, 2019 date of removal. See Exhibit 2 (emails between WT AK Ventures and KC Kregar).

18. The Agreement also provided that WT AK Ventures will have the option to rent the property during the 2019 season. Although WT AK Ventures' 2018 clients expressed concern about KC Kregar's behavior during the 2018 season, many of the clients were very enthusiastic about the location and amenities of the Property and returning for the 2019 season at this same location (if KC Kregar was not present on the Property) which was significantly better with regard to location and amenities (including the new dining hall and kitchen area, two out houses, a sauna/shower room, and running water) than the prior location that WT AK Ventures leased from Choggiung Ltd. for the 2016 and 2017 seasons. A number of repeat clients from 2016 and/or 2017 made it clear that they preferred the Property over the prior location of the camp in the 2016 and 2017 seasons (if KC Kregar was not present on the Property).

19. On January 26, 2019, WT AK Ventures exercised its option to rent the Property during the 2019 season. WT AK Ventures proposed June 12, 2019 through July 14, 2019 as the dates for the lease for the 2019 season, the same dates that WT AK Ventures leased the Property in 2018. WT AK Ventures also proposed that it would lease the Property for $8,250 which would be a 10 percent increase from the 2018 lease price. WT AK Ventures also made it clear that KC Kregar could not be present on the Property during the 2019 lease period

when WT AK Ventures' clients were present. WT AK Ventures requested that KC Kregar confirm that the proposed terms were acceptable by February 1, 2019.

20. On January 26, 2019, KC Kregar responded via email stating:

> The Property Use Agreement between Bristol Bay Fishing Club (BBFC) and WT AK for 2018, states in the final paragraph that "WT AK will have the option to rent the property during the 2019 season." Bristol Bay Fishing Club is not of the opinion that this paragraph is sufficient to form a binding option contract under Alaska law. Even if it were sufficient to form a binding option, the contract clearly reserves KC Kregar, of BBFC the right to set the price and date terms for the season.
>
> Should BBFC choose to do business with WT AK in 2019, a new contract between WT AK and BBFC will need to be created. In light of the damage done to my property, your partner's inappropriate behavior and the fact you told me directly on July 12, 2018, that WT AK would not be returning to the property; the price increase will be substantially more than the 10% you have suggested and may limit the duration of the season considerably. Please note, I will also be present on my property during the entire 2019 season.
>
> I will not be able to give you an answer by February 1, 2018 [sic], despite your instance, as I now need to seek out legal counsel before we can proceed. I will have an answer for you sometime before the season starts once I have had the chance to talk more to an attorney.

21. As part of WT AK Ventures ongoing efforts to attract clients for the 2019 season, it has advertised in Fish Alaska Magazine and has participated in three outdoor shows, two in Oregon and one Washington. WT AK Ventures anticipates participating in at least one more show before the season begins. WT AK Ventures has spent more than $10,000 in advertising and marketing for the 2019 season.

22. For the 2019 season, WT AK Ventures has offered its clients a five night four and a half day fishing experience at a cost of $3,600 per person. The 2019 schedule includes the following dates: June 16 – 21, June 21 – 26, June 26 – July 1, July 1 – July 6, and July 6 – 11. WT AK Ventures has already booked approximately 70 percent of its availability for

the 2019 season generating sales of more than $100,000. WT AK Ventures continues to book clients for the 2019 season and anticipates that its camp for the 2019 season will be at least 90 percent booked generating additional sales of more than $28,000.

23. During the 2018 season, WT AK Ventures is informed and believes that KC Kregar, made repeated false and defamatory statements to WT AK Ventures' clients, guides and staff and other persons that (1) Tyler Caskey had inappropriate sexual contact and/or relations with KC Kregar's minor daughter, and (2) Tyler Caskey is an incompetent, unqualified, incapable and inexperienced guide, camp operator and onsite manager who posed a danger to others and should not be running a fish camp.

24. After the 2018 season, WT AK Ventures is informed and believes that KC Kregar made repeated false and defamatory statements to WT AK Ventures' clients, guides and staff that (1) Tyler Caskey had inappropriate sexual contact and/or relations with KC Kregar's minor daughter, and (2) Tyler Caskey is an incompetent, unqualified, incapable and inexperienced guide, camp operator and onsite manager who posed a danger to others and should not be running a fish camp.

25. During telephone conversations on January 25 and 26, 2019, between WT AK Ventures and KC Kregar, he made repeated false and defamatory statements that (1) Tyler Caskey had inappropriate sexual contact and/or relations with KC Kregar's minor daughter, and (2) Tyler Caskey is an incompetent, unqualified, incapable and inexperienced guide, camp operator and onsite manager who posed a danger to others and should not be running a fish camp. KC Kregar also stated that he would tell all of his neighbors on the Nushagak River and all of WT AK Ventures' future customers about Tyler Caskey's alleged sexual misconduct and WT AK Ventures' wrong and improper conduct in dealing with KC Kregar.

26. On January 26, 2019, KC Kregar threatened to terminate the Agreement and require WT AK Ventures to remove the camp property currently being stored on the Property within 30 days in direct violation and breach of the Agreement entered into on November 20, 2017, and subsequent communications on July 20 and 21, 2018 memorializing the details of the storage agreement. WT AK Ventures estimates that the value of the camp property being stored on the Property is more than $100,000 and the camp property is essential for the operation of the camp. WT AK Ventures does not know the status of its camp property as of the filing of this complaint.

COMPLAINT
*WT AK VENTURES LLC ET AL. V. KC KREGAR* PAGE **6** OF **12**
Case 3:19-cv-00047-HRH   Document 1   Filed 02/20/19   Page 6 of 12

27. Since the 2018 season ended, WT AK Ventures has been actively looking to purchase or lease alternative comparable property to operate its king salmon camp for the 2019 season. WT AK Ventures has been unsuccessful in finding alternate comparable property for the 2019 season.

28. WT AK Ventures is informed and believes that its inability to purchase or lease alternative comparable property is due in full or in part to defamatory statements made by KC Kregar regarding WT AK Ventures and Tyler Caskey.

29. If WT AK Ventures is not permitted to lease the Property for the 2019 season pursuant to the Agreement and it cannot find alternative comparable property in a similar location and with similar amenities, then WT AK Ventures will suffer significant and irreparable harm. WT AK Ventures will suffer damages in the form of lost sales in that it will be required to notify all of its clients that the season has been canceled and refund all of their money, as well as possibly reimbursing its clients for expenses already incurred, such as non-refundable airline tickets. WT AK Ventures will also suffer significant harm to its business reputation if it is required to cancel the season and notify its clients that their trips have been cancelled.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

30. Plaintiff WT AK Ventures hereby repeats, refers to and realleges all of the allegations contained in paragraphs 1 through 29, inclusive, of this Complaint, and incorporates the same by reference as though fully set forth herein.

31. WT AK Ventures and KC Kregar entered into the Agreement.

32. KC Kregar failed to keep his promise pursuant to the Agreement during the 2018 season because he refused to vacate the Property during the time period that WT AK Ventures had leased the Property from him.

33. WT AK Ventures suffered harm as a result of KC Kregar's failure to keep his promise pursuant to the Agreement during the 2018 season.

//
//
//
//

COMPLAINT
*WT AK VENTURES LLC ET AL. V. KC KREGAR*  PAGE **7** OF **12**
Case 3:19-cv-00047-HRH   Document 1   Filed 02/20/19   Page 7 of 12

## SECOND CAUSE OF ACTION
### (Breach of Contract)

34. Plaintiff WT AK Ventures hereby repeats, refers to and realleges all of the allegations contained in paragraphs 1 through 29, inclusive, of this Complaint, and incorporates the same by reference as though fully set forth herein.

35. WT AK Ventures and KC Kregar entered into the Agreement.

36. KC Kregar failed to keep his promise because he has refused to lease the Property to WT AK Ventures for the 2019 season pursuant to the Agreement by:

   a. refusing to lease the Property to WT AK Ventures at a reasonable price proposed by WT AK Ventures or to even provide any reasonable lease price;

   b. refusing to lease the Property to WT AK Ventures on the same dates as the Property was leased for the 2018 season or to even provide any reasonable lease dates given that WT AK Ventures schedule was known to KC Kregar; and

   c. refusing to agree to vacate the property during the 2019 season when WT AK Ventures would be leasing the Property for its king salmon camp and clients would be present.

37. WT AK Ventures has and will suffer harm as a result of KC Kregar's failure to keep his promise pursuant to the Agreement to lease the Property for the 2019 season.

## THIRD CAUSE OF ACTION
### (Breach of Contract)

38. Plaintiff WT AK Ventures hereby repeats, refers to and realleges all of the allegations contained in paragraphs 1 through 29, inclusive, of this Complaint, and incorporates the same by reference as though fully set forth herein.

39. WT AK Ventures and KC Kregar entered into the Agreement.

40. KC Kregar failed to keep his promise because he has stated his intention to breach the agreement whereby WT AK Ventures was allowed to store its camp property at the Property.

41. WT AK Ventures will suffer harm as a result of KC Kregar's failure to keep his promise pursuant to the Agreement to store the camp property at the Property for the 2018/2019 off season.

//

COMPLAINT
*WT AK VENTURES LLC ET AL. V. KC KREGAR* PAGE **8** OF **12**
Case 3:19-cv-00047-HRH   Document 1   Filed 02/20/19   Page 8 of 12

## FOURTH CAUSE OF ACTION
### (Intentional Misrepresentation)

42. Plaintiff WT AK Ventures hereby repeats, refers to and realleges all of the allegations contained in paragraphs 1 through 29, inclusive, of this Complaint, and incorporates the same by reference as though fully set forth herein.

43. WT AK Ventures and KC Kregar entered into the Agreement.

44. KC Kregar made a false and misleading statement to WT AK Ventures by stating that he would lease the Property to WT AK Ventures without stating that he would not vacate the Property during this lease period but would be present when WT AK Ventures' clients were present.

45. KC Kregar knew that his statement that he would lease the Property to WT AK Ventures was false or misleading when he made it because he knew that he would not vacate the Property during the time period that WT AK Ventures had leased the Property and would have clients at the camp.

46. KC Kregar intended or had reason to expect that WT AK Ventures would rely on the Agreement that he would lease the property to WT AK Ventures.

47. WT AK Ventures justifiably relied on the false and misleading statement by KC Kregar.

48. WT AK Ventures has and will suffer harm as a result of KC Kregar's false and misleading statements.

49. WT AK Ventures reliance on the statement was a substantial factor in causing WT AK Ventures' loss.

## FIFTH CAUSE OF ACTION
### (Negligent Misrepresentation)

50. Plaintiff WT AK Ventures hereby repeats, refers to and realleges all of the allegations contained in paragraphs 1 through 29, inclusive, of this Complaint, and incorporates the same by reference as though fully set forth herein.

51. WT AK Ventures and KC Kregar entered into the Agreement.

52. KC Kregar made a statement to WT AK Ventures that he would lease the Property to WT AK Ventures without stating that he would not vacate the Property during this lease period but would be present when WT AK Ventures' clients were present.

LAW OFFICE OF TIM PETUMENOS
1227 West 9th Avenue, Suite 301, Anchorage, AK 99501
Phone: (907) 276-2676   Email: timp@tpaklaw.com

53. KC Kregar knew that his statement that he would lease the Property to WT AK Ventures was false when he made it because he knew that he would not vacate the Property during the time period that WT AK Ventures had leased the Property and would have clients at the camp.

54. KC Kregar failed to use reasonable care when making the statement.

55. KC Kregar intended or had reason to expect that WT AK Ventures would rely on the Agreement that he would lease the Property to WT AK Ventures.

56. WT AK Ventures justifiably relied on the statement by KC Kregar.

57. WT AK Ventures has and will suffer harm as a result of KC Kregar's statements.

58. WT AK Ventures reliance on the statement was a substantial factor in causing WT AK Ventures' loss.

## SIXTH CAUSE OF ACTION
### (Intentional Interference With Prospective Economic Advantage)

59. Plaintiff WT AK Ventures hereby repeats, refers to and realleges all of the allegations contained in paragraphs 1 through 29, inclusive, of this Complaint, and incorporates the same by reference as though fully set forth herein.

60. WT AK Ventures had a potential business relationship with property owners on the Nushagak River to purchase property to use for its king salmon camp for the 2019 season and future seasons.

61. KC Kregar knew about the business relationship.

62. KC Kregar intended to prevent and/or disrupt WT AK Ventures from purchasing property on the Nushagak River.

63. KC Kregar's interference caused damage to WT AK Ventures.

64. KC Kregar's conduct was not privileged or justified.

## SEVENTH CAUSE OF ACTION
### (Defamation)

65. Plaintiffs hereby repeat, refer to and reallege all of the allegations contained in paragraphs 1 through 29, inclusive, of this Complaint, and incorporate the same by reference as though fully set forth herein.

66. KC Kregar made the following statements:

   a. Tyler Caskey had inappropriate sexual contact and/or relations with KC Kregar's minor daughter;

b.      Tyler Caskey is an incompetent, unqualified, incapable and inexperienced guide, camp operator and onsite manager who poses a danger to others and should not be running a fish camp;

            c.      WT AK Ventures' head guide, camp operator and onsite manager had inappropriate sexual contact and/or relations with KC Kregar's minor daughter; and

            d.      WT AK Ventures has an incompetent, unqualified, incapable and inexperienced head guide, camp operator and onsite manager who poses a danger to others and should not be running a fish camp.

    67.     KC Kregar communicated these statements to persons other than Plaintiffs.

    68.     These statements were reasonably understood by those persons to be about Plaintiffs.

    69.     The statements were false.

    70.     KC Kregar knew the statements were false or failed to use reasonable care to determine whether the statement was true or false.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court to enter judgment against Defendant as follows:

    1.      That this Court enter a temporary restraining order and preliminary and permanent injunction order requiring KC Kregar to lease the Property to WT AK Ventures for the 2019 season at a reasonable rate and during the same period of time (June 12 through July 14, 2019) and that WT AK Ventures will have exclusive use of the Property during this lease period without KC Kregar being present; or

    2.      That this Court enter a declaratory judgment that KC Kregar has materially breached the terms of the Agreement, WT AK Ventures is relieved of any further obligations under the Agreement and WT AK Ventures has suffered harm as a result of the breach;

    3.      Compensatory damages;

    4.      Punitive damages; and

    5.      Attorney fees; and

    6.      Costs; and

    7.      Such further relief as the Court deems appropriate and just.

DATED this 20th day of February 2019.

                LAW OFFICE OF TIM PETUMENOS, LLC
                Attorneys for WT AK Ventures LLC

                By: /s/ Timothy J. Petumenos
                    Timothy J. Petumenos, ABA No. 7611147

LAW OFFICE OF TIM PETUMENOS
1227 West 9th Avenue, Suite 301, Anchorage, AK 99501
Phone: (907) 276-2676   Email: timp@tpaklaw.com